Good morning. Alex Stewart here, appearing on behalf of the plaintiff and appellant Fresno Motors. I appreciate the opportunity to address the court on behalf of my clients today. This matter comes to the court on a Rule 56 motion for summary judgment, in which the trial court, in footnote 16 of its order, determined that there was a triable issue of fact as to the timing of the defendant taking the deal from the plaintiffs, and that that would preclude the granting of summary judgment. However, the court went on and said there was a legal issue that allowed the court to grant summary judgment in this matter, and that legal issue was what the court called the not-a-stranger test. And I'd like to spend my time this morning talking about that and how that test applies to two very different torts that were alleged by the plaintiffs in this case. The two torts were interference with an existing contract and interference with prospective economic advantage. The court applied this test, blurring the two different torts together, and it relied on two cases to do that. And as we've pointed out in recent correspondence to the court, in the last three months, three courts have said that's not a test under California law. Two California courts of appeal, the First District and the Second District, and a Northern District judge, Ronald White, in the city of San Jose case with Major League Baseball. What do we do? We have to apply the California law. And sort of I've read all these cases, and I sort of come up with I don't know what the California law is. Well, why don't we go to the roots and kind of look at this from a big picture, because I think that helps define what the California law is, Your Honor. The case that starts all of this not-a-stranger analysis is called Applied Equipment. It was a case in which the California Supreme Court was very concerned about extending tort remedies where a breach of contract remedy had been bargained for between the parties. And if the plaintiff could get a breach of contract remedy against the defendant, that was it. You're not going to go out and get a tort remedy. And this was a natural progression from the Siemens direct buying case where they used to use the implied covenant of good faith and fair dealing to do an end-around breach of contract remedy. So Applied Equipment was concerned about parties, contractual relationships, and the ability to get breach of contract damages. The Court used some gratuitous language. It said a stranger to the contract, and then it went on and said someone without a legitimate interest. And that has spawned where we got to today with some of these other courts. And we haven't heard from the California Supreme Court since on this issue. We haven't. But what's interesting is when you look at some of the cases that have come down since then, the California Supreme Court has never said not a stranger in addressing these interference torts as an end-all legal interpretation of what the standard is for whether a plaintiff can proceed. And, for example, the Korea Supply case, which was the case that was cited by the district court for the elements of the two very different torts. And in that case, the Supreme Court said it's important that trial courts do not blur the distinction between these two very different torts. One protects an existing contract. The other protects the possibility of a contract, a prospective economic opportunity. And on that one, there's another element that's required to be proved, and that's element of wrongfulness, which is how, I think, the other case the Court relied upon, the Ninth Circuit's Rintug decision, gets pulled into this. Because that decision focused exclusively on only the second tort, prospective economic advantage, and the requirement of a separate wrongfulness standard. And what the Court did there, interestingly, was it asked the Supreme Court for some guidance, and the Court declined. And so the Ninth Circuit then looked at the issue, tried to predict how the Supreme And then went back and looked at some California case law, specifically a case called AMARC. Where AMARC involved the privilege of competition defense, where there are four elements, one of which is wrongfulness. And then analyzed wrongfulness and said, for example, if someone is not a stranger to a relationship, they don't usually have liability. They didn't say always. The Ninth Circuit said usually, and then went on and looked at other elements, including the element of unlawfulness. Well, the Court of Appeals has not really thought Martin Tug was the greatest thing that came out since Marbury v. Madison. And they've been very critical of it. But it is a decision of the Ninth Circuit. And, of course, we have two alternatives, if this is really as confusing as it sounds after you read the briefs. We could try certification to the Supreme Court on the issue, which they have not been too happy about cleaning up. Or we could say, well, we've said it once in Martin, and we're going to follow Martin until the Supreme Court tells us, the Supreme Court of California tells us otherwise. I think there's a third alternative. And that alternative is that Marin Tug was only focused on the wrongfulness element of the interference with prospective economic advantage tort. That element does not exist in the interference with existing contract tort. And that element of wrongfulness requires looking at a whole different set of criteria. Is there an interest in the relationship? Was there unlawful activity? I don't believe Marin Tug stands for the proposition that if somebody has an unlawful activity to disrupt that relationship, that they are automatically immune. Otherwise, what the Court would have said in Marin Tug is that not usually there's no liability. They'd say there's never liability if you have a direct interest in the economic outcome. So you would have us distinguish the Tug case. Yes. As not applicable to this fact situation. Because. And then apply the court of appeals decisions, the ones that you like the best. Well, the ones that have actually looked at the analysis of the Supreme Court as to how it got to where it did and applied equipment. It's interesting because we have the courts that say when they use the phrase stranger, they mean not a party, not somebody else. But then you look at what else the Supreme Court said about its own decision. And what it said was that the party who conspired with someone else was not liable in tort. But then offered in dicta, I'll admit, that the tort remedy against the non-party on that contract they were not ruling on. So what's happening here is that we're now getting this broader group of people who don't have contract remedies that they're exposed to coming in and saying, well, we like the gratuitous language, we're not a stranger. But this is a simpler case than some of those others, isn't it? I mean, you're saying that Mercedes-Benz is a stranger to a contract, but it has a contractual right under the dealer agreement literally to interfere with that contract and under the statute has a right to interfere with that contract by taking it over, by exercising a right of first refusal. And that distinguishes it from almost all the other cases like Powerhouse that you cite recently where there was a right to reject a contract or to not consent to a transfer. But this is an actual right that was exercised to take over that contract. How can you say that that party was a stranger to a contract that has a right to take over? Well, it's a stranger to the contract, but it has a statutory right to come in and take a deal. It has a contractual right with its own dealer. With its own dealer. That contract exists between the dealer and itself. It's not a contractual right it has with the plaintiff. But significantly, Your Honor, what we have here is we also have a statute that governs that. And that's where the district court found that on the timing of the exercise, there were tribal issues of fact that prevented summary judgment. We're not here after a trial. We're here after the granting of summary judgment. And the right to interfere is very constrained by the California legislature in a statute that doesn't say simply it is a violation of this code, but goes on to say it is unlawful, any violation of this code, so that the legislature has decreed that any right of first refusal is unlawful unless they follow the specific criteria that is set forth there. And interestingly, in the Korea supply case, what was the basis of the district court's decision here, what they found there was only on the interference with prospective economic advantage tort, again, focusing on the element that requires wrongful conduct and unlawful conduct, that there was a violation of the Foreign Corrupt Practices Act. And that that served as the basis of the unlawful conduct. Where, interestingly enough, there was Toyota, a car manufacturer, interested, very interested in the fact that its dealers were selling cars to third parties who were then taking those cars, shipping them overseas, and selling them in Japan where Toyota didn't want to sell any cars yet. They had a complete interest in what was happening with their automobiles. And the Supreme Court in Korea supply said because the manner in which they interfered with those agreements between dealers and third parties was in violation of the Foreign Corrupt Practices Act, that was unlawful and met the standard for the more difficult one, interference with prospective economic advantage. But here your client knew that the dealer agreement allowed Mercedes-Benz to exercise a right of first refusal, and the statute then set forth the various requirements for the exercise of that right. So your client went in with its eyes wide open. In fact, they submitted lots of information to Mercedes-Benz on request. So they knew that Mercedes had the right to do this. I don't see how you can cry foul when they did that. And the question about whether they exercised it properly or not, those facts are in the record as well. And I don't know if we're bound by a decision that they – that there were contested facts, but you conceded in your own brief that if we were – that if the exercise was proper, then that would be the end of it. And in fact, the contracting party that gave that right of first refusal has agreed that the exercise was proper. So I don't see where you have a right to complain about that. Well, the contracting party entered into an agreement that, as we pointed out, was an agreement that had other terms to it. But I think to answer Your Honor's question – No, my point is – and I'm sorry if I'm interrupting, but my point is that the notice of the exercise of the right of first refusal is to be given to the dealer. And that dealer does not contest the adequacy of that notice. Because the dealer was promised that they were going to be paid. And so we haven't – actually, Your Honor, that's an assumption. We asked for the opportunity to take discovery, to find out the state of mind of all these players. Why, for example, did they enter into that notice of acknowledgement? And the Court declined us that opportunity because the Court felt it could decide this issue solely and exclusively on the not a stranger test. And so we never had a chance to take any of those depositions to find out really what did Asbury think, et cetera. And the statute is silent in terms of who the notice should go to. And there are findings of fact that the timing of it, even as to Asbury, was in dispute because of the method. They had contracted to do so by mail or personal delivery. It was sent electronically. It wasn't deposited into the mail until one day after the deadline. So these were disputed issues of fact as to timing. And if, in fact, this case, the decision ultimately turns on timing, which is a disputed issue of fact, we should have the right to do discovery and have a fair trial on the merits. I'd like to reserve a little bit of time. I have two and a half minutes left. Thank you. You may do so. Good morning. Gwen Young on behalf of Mercedes-Benz USA. May it please the Court. On the interference claims, Your Honor is correct. This case is factually unique. And even from the very recent powerhouse sports Yamaha case, none of the California cases from Fresno that Fresno Motors relies on or that Mercedes relies on involved a statutory and contractual right to interfere with a third party's contract. That wasn't the case in Woods with the shareholders. It wasn't the case in the recent case that was mentioned of Ashi Kasi where the parent company was held potentially liable for interference with its subsidiary's contracts. That's not even the case in Applied Equipment or in Marantug. And it's precisely because Mercedes has both a statutory and a contractual right to interfere with the APA that it's not a stranger under the Applied Equipment doctrine. On that doctrine, Your Honor, in Applied Equipment, it specifically, the Court specifically said that a noncontract party can be liable for interference when it is an outsider who has no legitimate social or economic interest in the contractual relationship at issue. And that could be read in one of two ways, and it leaves us with the ambiguity that we have struggled with for the last years. It's flowery language. It's not sort of technical language and leaves us that a stranger to a contract may be one who is standing right by the contracting parties and knows them well and is quite familiar with it, but is not a party to the contract. That would be technically a stranger to the contract. But you want to read it as a broader way, that if it's somebody who sort of knows about it or has some kind of an interest in the way that the contract is administered, that that means that they are therefore not a stranger to the contract. And that still looks like that's there's something to what we said in Marin Tugg in a different context that would support that. But the California courts of appeals have been pretty secure after that that that's not the way that they read that opinion. Your Honor, the Applied Equipment, the Court in Applied Equipment made that statement twice. If they had only intended that contract parties are non-strangers and every non-contract party is a stranger, then there would be no need to explicitly state in their opinion that it applies to outsiders who have no legitimate interests. And the important thing, Your Honor, is that that case was the case that the Supreme Court ruled in the case of Pacific Gas and Electric. And in that case, Bear Stearns, who is not a party to the contract between Pacific Gas and a county water agency, actually, and it wasn't an agent of either of the parties, they supposedly induced Pacific Gas to sue or, excuse me, they induced the water agency to sue Pacific Gas for a declaration that it could terminate its contract with Pacific Gas. So Bear Stearns, clearly an outsider. The Court said upheld the dismissal because the gas company failed to allege that the underlying litigation was without merit or probable cause. And in sole ruling, it stated the policy behind tort liability is to protect the expectation of parties against, quote, officious meddlers. So here they had a third party, not an agent of either of the contract parties, meaning Pacific Gas and the water agency, and said you can be immune, provided that the underlying litigation that was instigated by Bear Stearns was meritorious. So granted they didn't give him blanket immunity as we're, as the district court did to Mercedes here, but they clearly were looking at non-parties as being not strangers to particular contexts. The, what do we do with, are we bound by Marin Tug? Is Marin Tug binding on this panel as the Ninth Circuit's official interpretation of the stranger language? I don't believe so, Your Honor, because that was several years ago. And obviously, State law changes, can change in between the intervening period where the. And when it changes in a way in which the California courts of appeal have interpreted a contrary to your, contrary to our interpretation of Marin Tug, are we bound, are we bound by their interpretation? Your Honor, you're not bound by the court of appeals determinations, particularly where, as here, there are conflicting decisions within the court of appeals' body of law with respect to the. So we're, we're sort of home free to decide what applied equipment means, is that right? I believe so, Your Honor. And most importantly, there have been other cases. Do you favor, should the Court certify the question, the California Supreme Court? I think, Your Honor, the Court can decide it based on applied equipment and on the very unique facts in this case of the statutory and the contractual rights that Mercedes has to interfere with the asset purchase agreement. And let me just go to one of the cases that, that the Supreme, or the court of appeals has decided that is very close to our situation, and that is, and this is after the Woods case, which is the premise for the plaintiff's arguments that only, only contract parties can be non-strangers. It's the PM Group v. Stewart case, decided in 2007. Again, it was decided after the Woods case and by the same Second Circuit Court of Appeals. And in that case, the singer, Rod Stewart, was deemed immune from liability for interference with his tour promoter's subcontracts with concert venues because the court said those contracts required Stewart's direct, active involvement in those contracts, and namely that they, that he performed concerts. The court reversed a jury verdict in favor of the plaintiff promoters against Stewart's agents as well. And the court said because the subcontracts at issues between the promoters and the venues provided for Stewart's performance, neither Stewart nor his agents can be liable for the tort of interfering with the subcontracts. And basically, it was as a matter of law, because Stewart was the basis of the business relationship on which the promoter's subcontracts were founded. This, this is a court of appeals case? Yes, it is. It's a. And it was decided in 2007 after the 2005 Woods decision. So you're analogizing that? How would that be, how would that, is that inconsistent or consistent with our Tug case? Our Tug. It's consistent, because again, it's looking at nonparties to the particular contract that is either being interfered with or with the prospective advantage that's being interfered with, and saying, look, there is this class or sphere of, of folks who are not parties to a contract, but they're also not strangers, because they have very legitimate, specific, substantial interests in the operation of that contract. And Marin Tug was a situation, I believe, where Shell's participation was, was essential to the Tug Company's contracts with third parties. So I take it's your position we don't need to bother going back to Supreme Court. We could use this case consistent with our prior Marin Tug for your argument? Correct. To, to interpret what applied, that applied equipment actually did create, or not create, but at least it, it stated that there can be these nonstrangers, or excuse me, there can be these nonparties who have a particular interest in a contract, and therefore, just like contract parties, because their interests are so intertwined in that underlying contract, they have as much an interest in the performance of that contract as contract parties do. In that case that you're referring to in the California Court of Appeals, what, what appeal is what? It was PM Group v. Stewart. But there are others, too. There's the, the Casparian. You cited that in your brief? Yes, we have. I don't have the page number, but yes, we do. I'm sorry. But there are other cases as well. There's the Casparian case. Granted, that was in 1995, so that was, was before Woods kind of stripped applied equipment of, of this whole theory. And also the Exxon v. Superior Court case, which is in, in 1995, again, Colorado Court of Appeal, or California Court of Appeals, which involved Exxon as a gas station franchisor with respect to the contracts that, or the prospective advantage that its franchisees, the gas station owners, were trying to, in that case, buy gas from jobbers instead of from Exxon itself at a much lower price. And the Court basically said, you have a right to interfere in those contracts because you as a franchisor have an interest in your dealings with your own dealers. And in that case, they relied on the Hamro case, a case by this Court from 1982, which set out, essentially, the not a stranger doctrine, but not in those specific terms. They looked at it more under the restatement sections that deal with what kind of interference is proper and what's not, and obviously, under the restatement section and under the case law citing it in that Hamro case, it's been a longstanding doctrine that you can look to, that third parties can be privileged, justified to interfere in contracts on this very same basis, that they have a specific economic or social interest in the underlying contracts. And, again, Hamro seems to collect a lot of the State law that predated applied equipment on these very same theories of who can be liable for interference and who can't. Alitoso, before you finish your time, would you address the franchise statute, the fees provision, please? I'm sorry, which? The franchise, the statute, the California statute that gives a cause of action for recovery of fees? Absolutely. I think the district court's analysis on this particular issue is incredibly solid. It's purely a statutory construction issue, and the district court applied the appropriate canons of statutory construction here. First, whether a party has a right to sue depends on whether the legislature has manifested an intent to create a private right of action under the specific statute. Before you get to the question of the private right of action, you don't dispute that a franchisor must reimburse transferee for expenses? That's part of the statute, yes. Okay. So you don't dispute that. So the transferee then has a right to certain kinds of fees under Provision T. They do. However, Your Honor, it's not through the violation of the statute. How are they supposed to collect it? They have other remedies, and that's unjust enrichment, for one, Your Honor, which specifically is a cause of action that all the elements they have to prove is that Mercedes received a benefit and that Mercedes unjustly retained the benefit at their expense. So they should have brought an action for unjust enrichment? Yes. And had – it's still not perfect under these facts, because had Mercedes moved on with a different candidate than Fresno Motors after it exercised – You would or you would not contest an action in unjust enrichment? They can certainly file it. It certainly would be inappropriate. I got that. Are you – would you contest it? We would. And I'll – You told me they had a right to the fees. I'm trying to figure out how they get their fees. Well, here's the deal, Your Honor. Again, this is a very unique case on these set of facts as well. And that is that after Mercedes exercised, Fresno Motors complained that we improperly exercised. So we decided, okay, rather than go forward, we're going to go to mediation. We went to mediation. The – and about a week or two before that, they had presented us with their accounting of $2 million in fees, which is just outrageous. We objected. At the mediation, we agreed with Fresno Motors that Mercedes would assign its right of first refusal rights in the APA back to Fresno Motors and that Fresno Motors would then be its assignee under the asset purchase agreement and go forward as if it – as our dealer candidate at that point. Well, at that instant, when we agreed that we would make them our assignee, again, on some conditions that they get financing and et cetera, when we made that agreement, all that benefit that was conferred on Mercedes by virtue of its exercise went back to Fresno Motors. So – Okay. But that would be – that would be an affirmative defense against an unjust enrichment claim. Oh, correct. Okay. So you wouldn't dispute that if they filed an unjust enrichment, you wouldn't dispute it. Correct. Do they have any other remedies? Or is the only one in common law is the common law action? They don't have a remedy under the statute. They have that common law or equitable remedy. They have other common law remedies. There's nothing about the – What other common law remedies do they have? I feel like I've asked this question about three times. That would be a – I keep getting the same – I keep getting the same answer, which is unjust enrichment. I got that part. I'm trying to see if there's anything else. That's the only one I can think of, Your Honor. They have no regulatory remedy. There's no – there's nobody in State government who can collect these fees for them. Oh, of course. Yes, there are. Under the vehicle code, the Department of Motor Vehicles has express enforcement authority to not only – Does the Department of Motor Vehicles in California have any mechanism or office that addresses this kind of situation? Yes, they do. It's the Department of Motor Vehicles. And that – Does the DMV have a – an office to which Fresno Motors should have directed itself? That, in fact, collects these kinds of fees. Your Honor, I have been – I have represented a number of manufacturers in these types of investigations, and they're usually instigated or started by dealers or the dealer association when they feel that a manufacturer – Do you know of – do you have any – do you know of any franchise in history, any automobile franchise in history that has ever been able to collect money under this provision through the DMV? Not particularly on this provision, but there have been on other – on other purported violations of the – of the statute. And what the DMV does is, as soon as they're contacted by a dealer or dealer association, they investigate, and what they do is they try and find out from the – the petitioners, if you will, the dealers, what their harm has been, what their damages have been, why are they complaining about this. And what they do is they incorporate into either a settlement agreement that the manufacturer, besides paying a fine, has to pay the dealer or whoever the harmed party is – could be a consumer – you know, X dollars that they agree on. If it goes to a hearing, the – there's express authority under the DMV statutes, the vehicle code, to impose what they call their form of, quote, restitution, which is any damages that may be due to the party who is complaining, the complainant. Let me ask one question on that subject. Has Mercedes – does Mercedes-Benz agree that Fresno is entitled to its expenses paid or incurred as provided in the statute? At the time of our exercise, we certainly agreed that it was. Well, even now, even today? Today, no, and only because of the fact that we reassigned, basically, our rights in the asset purchase agreement back to Fresno Motors at the time of the mediation, which was July of 2009. The fact that the deal fell apart much later on, that's down the road. We made the transition. We made them our dealer candidate. The fact that they couldn't come to an agreement with Asbury is not our issue. They had the benefit of their negotiation of the contract back. They had their benefit of the environmental reports they did back. They had the benefit of whatever other expenses they had at the time back, at the time that we transferred or assigned our rights back to them. Okay. Am I turning this up, I think, or? Yes. I think you're – we've taken you over time, but we appreciate the argument. Thank you very much, Ms. Young. Thank you, Your Honor. I want to address the issue of the right to be paid. We did, interestingly enough, raise unjust enrichment through our assertion of the unfair competition law, and the argument we got back was no benefit was conferred on Mercedes. So now I'm hearing for the first time, apparently, they acknowledged that a benefit was conferred on them by the work that was done, and the issue ultimate will be the discovery and a contested trial over whether or not they have affirmative defenses that they can prevail on relative to what happened. When you sought – when you sought your expenses paid or incurred, you added to that a lost profits claim as well, did you not? It wasn't a lost profits, Your Honor. It was an expense that my client had incurred because – The $2 million was – Was purchasing some tax credits that ultimately were backed out of that because they were refunded. So they turned out not to be an expense. At the time they were presented, they were an expense. There's a lot of discussion here that's outside the record relative to what the DMV does. We've pointed out in our brief that there's a discretionary right on the part of the DMV to pursue something if it wants to or not. There's no ability for my client to go anywhere but into a court of law to make sure that its rights are protected. And I was looking at a moment at the – the court's wrestling with what to do, it appears, on these appellate court decisions. In this PM Group case with the singer Rod Stewart, that's where there was no contract to start with that could compel Stewart to do anything. There wasn't some regulated right of first refusal. And what's important here, we're not talking about simply whether someone who has an interest in a deal is saying no. We're talking about somebody who takes the deal for themselves. To draw an analogy, if a bride and groom show up at the altar and one of them says, you know what, I can't see myself spending the rest of my life with you and walks out the door, that's – I'm not going to do a deal with you. If on the way out the door they grab the rings, the presents, the cake, and they take it across the street to go enter into a relationship with someone else, that's what was happening here. They were taking my client's hard work, the investigation, the negotiation contract nicely wrapped up and they took it for themselves. It was regulated. They took it out of time, unlawfully, under the statute. They therefore had no right to do that at all. And then part of what they had to do under the statute was pay for it and they didn't even offer to pay anything. We then get into a lot of disputed factual issues as to what happened at the mediation and afterward and why the deal didn't come through. We should have a right – this is a Rule 56 motion – we should have a right to do a trial in front of a jury on the merits. Okay. Thank you very much. Thank you. It's a complicated case and we appreciate the arguments of counsel.  Thank you. Thank you.
judges: Gettleman, Wallace, Bybee